UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

ANDREW RODRIGUEZ, in his individual capacity       :
and on behalf of others similarly situated,        :
                                                   :
                        Plaintiff,                 :       Case No. 19-cv-07052 (PKC) (RML)
            -against-                              :
                                                   :
NATIONAL GOLF LINKS OF AMERICA and                 :
WILLIAM MULLER,                                    :
                                                   :
                        Defendants.                :

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION**

---

By:   Domenique Camacho Moran, Esq.
       FARRELL FRITZ, P.C.
       *Attorneys for Defendants*
       400 RXR Plaza
       Uniondale, New York 11556
       Tel.: (516) 227-0700

        *- and -*

       Marc Wolinsky, Esq.
       Nathaniel D. Cullerton, Esq.
       WACHTELL, LIPTON, ROSEN & KATZ
       *Attorneys for Defendants*
       51 West 52nd Street
       New York, New York 10019
       Tel.: (212) 403-1000

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

ARGUMENT ....................................................................................................................... 4

POINT I

      THE STANDARDS GOVERNING THIS MOTION ......................................................... 4

POINT II

      RODRIGUEZ HAS NOT DEMONSTRATED THAT HE IS SIMILARLY
      SITUATED TO OTHER PUTATIVE CLASS MEMBERS ............................................... 4

POINT III

      RODRIGUEZ HAS NOT DEMONSTRATED A COMMON  PLAN OR POLICY
      THAT "VIOLATED THE LAW" ...................................................................................... 9

            A.    Rodriguez and the other putative class members are not
                 "employees" under the FLSA. .................................................................. 10

            B.    The National is a seasonal recreational establishment exempt
                 from the FLSA. ........................................................................................ 12

POINT IV

      RODRIGUEZ'S PROPOSED NOTICE TO PUTATIVE  CLASS MEMBERS
      SHOULD BE REJECTED ............................................................................................... 13

CONCLUSION ................................................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amendola v. Bristol-Myers Squibb Co.*,
   558 F. Supp. 2d 459 (S.D.N.Y. 2008)...............................................................................10, 13

*Barfield v. N.Y. City Health & Hosp. Corp.*,
   No. 05-Civ-6319, 2005 WL 3098730 (S.D.N.Y. Jul. 30, 2005)..........................................5

*Bhumithanarn* v. *22 Noodle Mkt. Corp.*,
   2015 WL 4240985 (S.D.N.Y. July 13, 2015) ......................................................................6

*Bowens v. Atl. Main Corp.*,
   546 F. Supp. 2d 55 (E.D.N.Y. 2008) ................................................................................14

*Brock* v. *Louvers & Dampers, Inc.*,
   817 F.2d 1255 (6th Cir. 1987) ..........................................................................................12

*Christensen v. Harris County*,
   529 U.S. 576 (2000)...........................................................................................................11

*Cunningham v. Elec. Data Sys. Corp.*,
   754 F. Supp. 2d 638 (S.D.N.Y. 2010)................................................................................4

*Derrig* v. *Rich Harvest Farms Co.*,
   2010 WL 375188 (N.D. Ill. Feb. 1, 2010) ........................................................................12

*Fasanelli v. Heartland Brewery, Inc.*,
   516 F. Supp. 2d 317 (S.D.N.Y. 2007)..............................................................................14

*Flores v. Osaka Health Spa, Inc.*,
   No. 05-Civ-962, 2006 WL 695675 (S.D.N.Y. Mar. 16, 2006)...........................................4

*Guillen v. Marshalls of MA, Inc.*,
   841 F. Supp. 2d 797 (S.D.N.Y. 2012)................................................................................9

*Gurrieri v. County of Nassau*,
   No. 16-Civ-6983, 2019 WL 2233830 (E.D.N.Y. May 23, 2019)......................................15

*Hill v. Delaware N. Co. Sportservice, Inc.*,
   838 F.3d 281 (2d Cir. 2016)..............................................................................................11

*Jeffrey v. Sarasota White Sox, Inc.*,
   64 F.3d 590 (11th Cir. 1995) ............................................................................................13

*Ji v. Jling Inc.*,
    15-Civ-4194, 2016 WL 2939154 (E.D.N.Y. May 19, 2016)................................................8, 9

*JJR, Inc. v. United States*,
    950 F. Supp. 1037 (W.D. Wash. 1997)..........................................................................11

*Lee v. ABC Carpet & Home*,
    236 F.RD 193, 197 (S.D.N.Y. 2006) ..............................................................................4

*Levinson v. Primedia Inc.*,
    No. 02-Civ-2222, 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003)..........................................5

*Lubas v. JLS Group, Inc.*,
    No. 18-Civ-6611, 2020 WL 4210754 (E.D.N.Y. Jul. 22, 2020)........................................15

*McBeth v. Gabrielli Truck Sales, Ltd.*,
    768 F. Supp. 2d 396 (E.D.N.Y. 2011) ...........................................................................15

*Moore v. Eagle Sanitation, Inc.*,
    276 F.R.D. 54 (E.D.N.Y. 2011) .....................................................................................14

*Morales v. Plantworks, Inc.*,
    No. 05-Civ-2349, 2006 WL 278154 (S.D.N.Y. Feb. 1, 2006) ........................................4, 5

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)........................................................................................5, 9

*In re Penthouse Exec. Club*,
    No. 10-Civ-1145, 2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010)......................................15

*Prizmic v. Armour, Inc.*,
    No. 05-Civ-2503, 2006 WL 1662614 (E.D.N.Y. June 12, 2006).......................................4

*Qing Gu v. T.C. Chikurin, Inc.*,
    No. 13-Civ-2322, 2014 WL 1515877 (E.D.N.Y. Apr. 17, 2014).....................................5, 6

*Reyes Cruz v. 70-30 Austin St. Bakery, Inc.*,
    No. 18-Civ-7408, 2019 WL 1929910 (S.D.N.Y. May 1, 2019) ......................................8, 9

*Sanchez v. JMP Ventures, L.L.C.*,
    No. 13-Civ-7264, 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ...................................6, 8, 9

*Schear v. Food Scope Am. Inc.*,
    297 F.R.D. 114 (S.D.N.Y 2014) ...................................................................................15

*Scholtisek v. Eldre Corp.*,
    229 F.R.D. 381 (W.D.N.Y. 2005)...................................................................................4

*Sexton v. Franklin First Fin., Ltd.*,
    2009 WL 1706535 (E.D.N.Y. June 16, 2009) ........................................................6

*Vasquez v. Vitamin Shoppe Indus., Inc.*,
    No. 10-Civ-8820, 2011 WL 2693712 (S.D.N.Y. Jul. 11, 2011)...........................5, 9

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
    767 F. Supp. 3d 445 (S.D.N.Y. 2011)..................................................................15

## Statutes

29 U.S.C. § 213(a)(3).........................................................................................................12

Fair Labor Standards Act ...................................................1, 2, 4, 9, 10, 11, 13, 15, 16

New York Labor Law § 511(8) ......................................................................................11

New York Workers' Compensation Law § 355.3(g)(5) ...............................................11

## Other Authorities

Internal Rev. Rul. 69-26, 1969-1 C.B. 251, 1969 WL 19332.......................................11

U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook, Ch. 10;
    10b15, *available at* https://www.dol.gov/whd/FOH/FOH_Ch10.pdf ...................10

U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook,
    Ch. 25; 25j01(b) (Aug. 10, 2016) .........................................................................13

Defendants National Golf Links of America (the "National") and William Muller ("Muller") (collectively, "defendants"), respectfully submit this memorandum of law in opposition to the motion of plaintiff Andrew Rodriguez ("Rodriguez") to proceed on a conditional basis as a collective action under the Fair Labor Standards Act (the "FLSA"). Submitted herewith is the transmittal declaration of Domenique Camacho Moran, Esq., which has Rodriguez's deposition (cited as "Tr. __") and Rodriguez's affidavit, sworn to May 27, 2020 (cited as "Pl. State Aff."),[1] appended as Exhibits A and B, respectively.

## PRELIMINARY STATEMENT

Rodriguez is not entitled to the conditional certification of the proposed class. His Amended Complaint, sworn affidavits, and deposition testimony do not provide sufficient facts to cross even the modest threshold necessary to establish that he is similarly situated to other caddies at the National.

Rodriguez has failed to demonstrate that he is "similarly situated" to the putative class members. Instead of facts, Rodriguez offers nothing more than a generalized and conclusory affidavit that parrots his complaint, an approach to conditional certification that courts in this Circuit have repeatedly rejected. Rodriguez's general assertions fail to establish the required factual nexus between his experience and that of other golf caddies. Instead, Rodriguez testified that caddies establish their own work schedules, caddy for more or less hours as desired, and did not regularly receive a standard rate of pay. In fact, Rodriguez admitted that he had no idea what other caddies at the National were paid. For these reasons, the conditional certification motion must be denied. *See* Point II, *infra*.

---

[1] This affidavit is from a pending state court action in the Supreme Court of the State of New York, County of Suffolk, entitled *McNiff v. Rodriguez*, Index No. 605235/2020.

1

Even if he could show some factual similarity to other members of the proposed class, conditional class certification would not be warranted because Rodriguez cannot establish that the purported class was subjected to a common policy that "violated the law."  Specifically, Rodriguez ignores the United States Department of Labor 2016 Field Manual, an Internal Revenue Service Ruling, and New York State law finding that golf caddies are not *employees*, a necessary element of any claim for overtime pay.  Further, Rodriguez alleges that the National operates for fewer than seven months each year.  As a seasonal recreational establishment, the National is exempt from the FLSA's overtime requirements.  With no viable claim, Rodriguez's attempt to conditionally certify a class must fail.  *See* Point III, *infra*.

Instead of presenting admissible evidence, Rodriguez asks this Court to rubber stamp his application and delay all substantive review of the proposed class members' similarity and the viability of his claims while requesting contact information for the past six years and sending a Notice of Pendency that is deficient in several respects.  *See* Point IV, *infra*.

For these reasons, and as set forth more fully below, Rodriguez's motion should be denied.

## STATEMENT OF FACTS[2]

The National is a private 18-hole golf course located in Suffolk County, New York.  Am. Compl. ¶ 19.  Its facilities include the National's golf course, Clubhouse, food service, Pro Shop and Halfway House, which are for the exclusive use of its members and their invited guests during the period from the last week of April through the first week of November.  Am. Compl. ¶ 20; Tr. at 22:2-13; 24:13-15.  In season, golf caddies, on any given day, often choose to arrive at the

---

[2] The facts set forth in Rodriguez's Amended Complaint and affidavit are deemed true solely for the purposes of this motion for conditional certification under the FLSA, and only to the extent not inconsistent with plaintiff's recent deposition testimony.  It is the defendants' position that Rodriguez was not an employee of the National and, therefore, not subject to the FLSA.

2

National in anticipation that members will need and retain their services.  Am. Compl. ¶ 43; Tr. at 32:4-15, 35:2-24, 41:6-20.  Members either contact the caddies directly to arrange their services, or if the member does not have a preference, the caddy master will assign an available caddy to the member.  Tr. 54:1-10, 58:24-59:13, 82:23-83:1, 128:18-131:17, 141:11-19.  Caddies primarily assist golfers on the golf course.  Am. Compl. ¶ 32.  They carry members' clubs during play, find and retrieve balls, fix divots, rake sand traps, wipe balls and clean golf clubs.  *Id.*  The National engaged an outside operations crew that was solely responsible for cleaning and staging the golf carts and preparing the driving range for play.  Tr. at 74.

Rodriguez caddied at the National from 2003 through 2019.  Am. Compl. ¶¶ 24-25. Rodriguez claims he chose to work seven days a week, caddying one or two rounds per day.  *Id.* at ¶¶ 34, 42.  Rodriguez acknowledges that members ordinarily pay caddies for all services rendered.  *Id.* at ¶ 47; Pl. State Aff. ¶¶ 12, 16.  Although Rodriguez claims that all caddies were paid a "predetermined rate," he concedes that members paid him significantly more than the so-called "predetermined rate" and that a caddy could earn more than the recommended amount by providing good services.  Pl. State Aff. ¶¶ 12, 16; Tr. at 59:10-23, 61:16-18, 62:19-22, 81:2-7, 84:11-17, 90:6-11, 98:13-15.

Further, while his sworn affidavit alleges that unidentified "golf caddies" uniformly worked the same schedule as Rodriguez, during deposition Rodriguez admitted that caddies worked various schedules and hours and that many did not even work 40 hours a week.  Tr. at 35:2-24, 36:12-37:6.  In fact, he conceded that he had no information regarding specific caddies' schedules, hours worked or compensation earned.  Am. Compl. ¶¶ 32, 39; Tr. at 151:14-24, 152:15-153:24.

## ARGUMENT

### POINT I

### THE STANDARDS GOVERNING THIS MOTION

In the Second Circuit "[courts] utilize a two-step approach when certifying collective actions under the FLSA." *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005); *Prizmic v. Armour, Inc.*, No. 05-Civ-2503, 2006 WL 1662614, at *7 (E.D.N.Y. June 12, 2006). The first step in this analysis is referred to as the "notice stage." "In the [notice] stage, the court examines the pleadings and the affidavits of the proposed collective action and determines whether the proposed class members are 'similarly situated.'" *Scholtisek*, 229 F.R.D. at 387. The court will consider evidence obtained in discovery in that analysis. *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 646-47 (S.D.N.Y. 2010). Ultimately, plaintiff bears the burden of showing he and the other putative class members are similarly situated. *Flores v. Osaka Health Spa, Inc.*, No. 05-Civ-962, 2006 WL 695675, at *4 (S.D.N.Y. Mar. 16, 2006).

Where, as here, the plaintiff cannot establish that he is similarly situated to the proposed class members or the existence of a common plan or policy that violated the law, conditional certification of the class should be denied. *Morales v. Plantworks, Inc.*, No. 05-Civ-2349, 2006 WL 278154 (S.D.N.Y. Feb. 1, 2006) (denying plaintiff's motion for conditional certification where plaintiff offered only conclusory allegations and presented no evidence); *Prizmic*, 2006 WL 1662614, at *7 (denying plaintiff's motion for conditional certification).

### POINT II

### RODRIGUEZ HAS NOT DEMONSTRATED THAT HE IS SIMILARLY SITUATED TO OTHER PUTATIVE CLASS MEMBERS

Rodriguez has not demonstrated a ***factual nexus*** between his individual claims and those of other potential class members. *Lee v. ABC Carpet & Home*, 236 F.RD 193, 197 (S.D.N.Y.

2006).  Plaintiff's allegations "must be specific not conclusory."  *Morales*, 2006 WL 278154, at *3; *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (although the plaintiff's conditional certification burden is "modest," it is not non-existent, and "cannot be satisfied simply by unsupported assertions."); *Vasquez v. Vitamin Shoppe Indus., Inc.*, No. 10-Civ-8820, 2011 WL 2693712, at *3 (S.D.N.Y. Jul. 11, 2011) (certification "is not automatic."); *Barfield v. N.Y. City Health & Hosp. Corp.*, No. 05-Civ-6319, 2005 WL 3098730, at *1 (S.D.N.Y. Jul. 30, 2005) (denying conditional certification where plaintiff's allegations regarding alleged similarly situated employees were based solely on hearsay statements); *Levinson v. Primedia Inc.*, No. 02-Civ-2222, 2003 WL 22533428, at *1-2 (S.D.N.Y. Nov. 6, 2003) (denying class certification where no admissible evidence that so-called similarly situated workers were paid below minimum wage or worked more than forty hours a week).

Where, as here, plaintiff relies solely on a single affidavit to establish that the putative opt-ins are similarly situated, the Court should more closely scrutinize the quality and detail of the plaintiff's factual averments.  *See, e.g., Qing Gu v. T.C. Chikurin, Inc.*, No. 13-Civ-2322, 2014 WL 1515877, at *3-*4 (E.D.N.Y. Apr. 17, 2014) ("where plaintiffs fail to provide specific factual allegations, courts routinely deny conditional certification") (collecting cases).

Simply put, Rodriguez cannot meet even the modest threshold required to demonstrate that he and other caddies at the National are similarly situated.  *Morales*, 2006 WL 278154. Rodriguez's conditional certification motion rests **solely** on the Amended Complaint and his affidavit.  At its core, Rodriguez claims that he **and all of the 80 other caddies** working for members at the National in each season for 6 years worked in excess of 60 hours each week and did not receive any overtime compensation.  Pl. Br. at 11-12.  Rather than specific details, Rodriguez relies on the Amended Complaint and his affidavit which state only that the schedule

allegedly worked by Rodriguez was "*generally* also worked by the National's other caddies."  Pl. Aff. ¶ 10; Am. Compl. ¶ 39; Pl. Br. at 11-12 (emphasis added).  In his affidavit, Rodriguez fails to identify a single caddy who worked similar hours or the basis for his knowledge.  *See generally* Pl. Aff.

Rodriguez simply cannot overcome case law establishing that in the absence of ***specific factual allegations***, courts routinely deny conditional certification.  *See Qing Gu*, 2014 WL 1515877, at *3-*4 (collecting cases); *see also Sanchez v. JMP Ventures, L.L.C.*, No. 13-Civ-7264, 2014 WL 465542, at *1-2 (S.D.N.Y. Jan. 27, 2014) (denying certification; "unsupported assertions and conclusory allegations" are "insufficient to support even an inference that a common policy or plan that violated the law existed with respect to [other] variet[ies] of potential opt-in plaintiff[s])."

The cases he relies upon, therefore, are inapposite.  *Sexton v. Franklin First Fin., Ltd.*, 2009 WL 1706535, at *5 (E.D.N.Y. June 16, 2009) (plaintiffs pointed to facts that set forth a "more than modest" factual basis of a common policy or scheme); *Bhumithanarn* v. *22 Noodle Mkt. Corp.*, 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015) (identified 25 other workers that worked for less than minimum wage and were not paid overtime).

Moreover, Rodriguez's affidavit is completely at odds with his own deposition testimony.  In his affidavit, sworn to on July 21, 2020, Rodriguez stated that the National has 30 to 50 caddies that work the full season with as many as 70 to 80 caddies during the busiest weeks.  Pl. Aff. ¶ 11.  He went on to state that ***all*** of those caddies worked the same schedule.  *Id.* at ¶ 10.  Yet, during his deposition on July 31, 2020, Rodriguez conceded that not all caddies spend more than 40 hours at the National each week.  For example, Rodriguez identified the "one-and-doners" – 15 to 20 caddies who arrived at the National (not necessarily every day), went out with golfers for a single

round of golf, and left the golf course immediately thereafter. Tr. at 36:12-37:6. According to Rodriguez, the so-called "one-and-doners" were "lazy," "not there to work," and "there to get the quick money and leave." *Id.* at 36:19-22.

Rodriguez also identified another group of approximately 15 caddies as so-called "weekend warriors" – those who, as the name suggests, "only worked weekends." *Id.* at 35:15-24. Finally, Rodriguez carved out another 18 to 23 college and high school students who often caddied a single round of golf before calling it a day. *Id.* at 44:21-46:4. In his words, "they are teenagers, so they don't want to be sitting there for a 14-hour day." *Id.* at 44:21-23. Thus, by his own sworn statements, Rodriguez admits that not all caddies at the National were similarly situated.

And while Rodriguez erroneously claims that the rates paid to caddies by members are "predetermined by the National" ($120 per golf bag) and that the "compensation structure applied to [he] and [ ] every other caddy working for defendants," Rodriguez did not identify a single caddy by name who received the alleged "predetermined rate." Pl. Aff. ¶¶ 21, 23; Am. Compl. ¶¶ 47-49, Tr. 151:14-20. Furthermore, Rodriguez admitted that he often received more than the "pre-determined rate," claiming golfers regularly paid him $300 per bag and sometimes as much as *$1,000* for a single round of golf.[3] Pl. State Aff. ¶¶ 11-23; Tr. at 59:15-23, 61:16-18, 133:6-17, 137:22-138:12. Rodriguez's deposition testimony cannot be squared with his attestation that *all* caddies at the National "generally" worked more than 40 hours in any given week and earned only the predetermined rate.

---

[3] Apparently recognizing that the payments he routinely received were far in excess of the supposed "pre-determined rate," Rodriguez later testified that he was never paid for caddying, and that he received only a "tip" from golfers. Tr. at 132:17-22; 143:7-19. It is worth noting that neither the Complaint nor the Amended Complaint assert claims for unpaid wages.

In *Sanchez v. JMP Ventures, L.L.C.*, the court found that where the basis of knowledge consists only of "observations" and "conversations" with other employees, without any further detail, the declaration fails to support conditional certification. *Sanchez*, 2014 WL 465542, at *1-2. Unlike the plaintiff in *Sanchez*, Rodriguez does not provide even a single fact that forms the basis of his generalized conclusion. Pl. Aff. ¶¶ 10, 23. Instead, he simply declares that other caddies worked the same or similar schedules and were paid the same rates without any further detail as to the source of his belief. *Id.* In fact, during his deposition, Rodriguez admitted that he "couldn't speak for anybody else, really, about how much they worked" and did not know how much other caddies were paid. Tr. at 151:14-153:24; *Sanchez*, 2014 WL 465542, at *2.

Similarly, this Court denied conditional certification in *Ji v. Jling Inc.*, 15-Civ-4194, 2016 WL 2939154 (E.D.N.Y. May 19, 2016). There, the plaintiff's affidavit did not allege the number of hours other employees worked per week. *Id.* at *4. Consequently, the Court found that plaintiff was unable to show that any other employees actually worked over forty hours in a given week or were entitled to overtime pay. *Id.* Denying certification, the Court found that plaintiff's evidence did not support an inference that other employees were denied overtime pay as a result of a policy or plan. *Id.* Here too, Rodriguez does not identify any specific caddy who worked over forty hours in any particular week. Pl. Aff. ¶ 10.

Just last year, conditional certification was denied in *Reyes Cruz v. 70-30 Austin St. Bakery, Inc.*, No. 18-Civ-7408, 2019 WL 1929910 (S.D.N.Y. May 1, 2019). There, as here, the plaintiff's affidavit did not substantiate his belief that his co-workers worked in excess of forty hours without overtime premium pay. *Id.* at *5. As a result, the Court concluded that the "broad assertions are precisely the vague, conclusory and unsupported assertions that are an insufficient basis for conditional certification" *Id.* at *5 (internal citation and quotation marks omitted).

8

Rodriguez has done even less to substantiate his claim that the putative class members are "similarly situated" than the plaintiffs in *Sanchez*, *Ji*, and *Reyes Cruz*. His affidavit fails to provide any specific factual allegations that others in the putative class caddied for more than forty hours in any given week. It lacks any details regarding the hours per week or the weekly earnings of any individual golf caddy. *See* Pl. Aff. ¶¶ 10, 23. In short, Rodriguez advances "precisely the kind of assertions and conclusory allegations that courts . . . have found to be insufficient to conditionally certify a class under §216(b)." *Sanchez*, 2014 WL 465542, at *2.

### POINT III

### RODRIGUEZ HAS NOT DEMONSTRATED A COMMON PLAN OR POLICY THAT "VIOLATED THE LAW"

To establish that the National's caddies are "similarly situated," Rodriguez must also show that all members of the putative class "were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555. Although Rodriguez claims he may satisfy this standard by simply alleging that they are all improperly classified (Pl. Br. at 11), it is well established that putative plaintiffs are not similarly situated based solely on the fact that the putative class is subject to a common job classification or description. *Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 804 fn. 2 (S.D.N.Y. 2012) (it is "well-settled" that plaintiffs cannot establish they are "similarly situated" at first stage "merely with respect to their being subject to a common job description"); *Vasquez*, 2011 WL 2693712, at *4 ("[T]he mere classification of a group of employees—even a large or nationwide group—as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for §216(b) purposes.").

Contrary to Rodriguez's assertions (Pl. Br. at 9), courts will consider the merits of the underlying claim on a motion for conditional certification under the FLSA when a defendant shows

that it will likely succeed at trial in proving that the plaintiffs are not entitled under the FLSA to overtime compensation. *See Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008). Even at this early stage, the applicable law, undisputed facts and allegations demonstrate that there was no common policy that violated the law as Rodriguez and the purported class have failed to demonstrate that they are "employees," as defined by the FLSA.

### A. Rodriguez and the other putative class members are not "employees" under the FLSA.

While at the National, Rodriguez performed the conventional functions of a caddy: carrying members' clubs during play, finding and retrieving balls, correcting divots, raking sand traps and cleaning golf clubs and balls. Am. Compl. ¶ 32. As a caddy, he served the needs of and was paid by, the golfers he accompanied. *Id.* at ¶ 47. Further, if his Amended Complaint and affidavit are assumed to be true, Rodriguez and other caddies earned far more than the applicable minimum wage. Pl. Aff. ¶¶ 21, 23; Am. Compl. ¶¶ 47-49.

The Department of Labor, Internal Revenue Service, and the New York legislature all agree that golf caddies, like Rodriguez and the rest of the putative class members, are not employees under the labor laws. In 2016, the Department of Labor issued a Field Operations Handbook ("FOH") to guide investigators when auditing employers and responding to wage and hour complaints. Mindful of the conventional functions of a caddy, the FOH expressly provides:

> Golf course caddies are engaged to serve the needs of particular players for substantial periods of time and their services are generally directed by and are of most immediate benefit to the players themselves. Arrangements may vary but the players, in one way or another, are expected to pay for the services rendered to them by the caddy. Because of these circumstances, the WHD [Wage and Hour Division] is not prepared to assert that caddies are employees of the golf course operator.

U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook, Ch. 10; 10b15, *available at* https://www.dol.gov/whd/FOH/FOH_Ch10.pdf. Here, Rodriguez admits to serving the needs of

particular golfers who paid him directly.  *See* Pl. Aff. ¶¶ 14, 21; Am. Compl. ¶¶ 32, 47.

Accordingly, the Department of Labor does not consider Rodriguez or any other members of the

putative class to be "employees" under the FLSA.

The Internal Revenue Service ("IRS") agrees.[4]  When asked to review the classification of

caddies as independent contractors, the IRS concluded that where, as here, golf caddies are paid

directly by the members of a club, they are not "employees."  *See* Rev. Rul. 69-26, 1969-1 C.B.

251, 1969 WL 19332 ("A golf club is not liable for the FICA and FUTA taxes with respect to

remuneration paid to caddies either directly by club members or indirectly by the club acting as

the agent of the members."); *see, e.g., JJR, Inc. v. United States*, 950 F. Supp. 1037, 1042 (W.D.

Wash. 1997) ("The Court can conclude, however, as a matter of law, viewing all disputed facts in

the government's favor, that the payments to the performers from customers (including credit card

payments) are not subject to employment taxes for the period in question.  This conclusion rests

on the 'caddy case' cited by taxpayer.").

In addition to the United States Department of Labor and Internal Revenue Service, the

New York legislature has taken the same position.  Both New York Labor Law § 511(8) and New

York Workers' Compensation Law § 355.3(g)(5) explicitly state that "employment" under the

labor laws ***does not*** include service as a golf caddy.

The Department of Labor's FOH, the IRS Ruling, and state law all evince that golf caddies

receiving payment directly from the golfers or members are not employees of any particular golf

course; they are ***independent contractors***.  Rodriguez's allegations fail to demonstrate that he, or

---

[4] Regulatory guidance from the Department of Labor and IRS is entitled to deference where it is well-reasoned.  *See Hill v. Delaware N. Co. Sportservice, Inc.*, 838 F.3d 281, 290 (2d Cir. 2016) (citing *Christensen v. Harris County*, 529 U.S. 576 (2000)).

any potential class member, are "employees" as defined by the FLSA or that the National's pay practices violate the FLSA.

**B.  The National is a seasonal recreational establishment exempt from the FLSA.**

By the factual assertions set forth in the Amended Complaint, his affidavit and deposition testimony, Rodriguez establishes that the National is a recreational establishment exempt from the Fair Labor Standards Act's overtime compensation provisions.

Under Section 213, an amusement or recreational establishment is exempt from the overtime requirements of the Act if it does not operate for more than seven calendar months in any calendar year.  29 U.S.C. § 213(a)(3).  The National, a private golf club, qualifies as an amusement or recreational establishments for purposes of the "seasonality" exemption.  *See Brock* v. *Louvers & Dampers, Inc*., 817 F.2d 1255, 1256 (6th Cir. 1987); *Derrig* v. *Rich Harvest Farms Co*., 2010 WL 375188, at *3 (N.D. Ill. Feb. 1, 2010).

Rodriguez alleged that the National is open from late April to the first weekend of November, *i.e.*, approximately six months out of the year.  Am. Compl. ¶ 20; Pl. Aff. ¶ 6.  Rodriguez confirmed during his deposition that the National season opens in April and shuts down the beginning of November.  *See* Tr. at 20:18–25, 26:2–7.  Specifically, Rodriguez testified that while some operations open on or about the third Friday in April (*e.g.,* the Clubhouse, locker room, and Pro Shop), the food service and the Halfway House were not "fully operational" until "the first Friday in May."  *See id*. at 24–26.  Rodriguez further testified that the National begins winding down operations for the season on October 15, closing the Clubhouse restaurant, punching the greens, and aerating the fairways.  *See id.* at 19:16–20, 20:9–11, 20:15–17.  It is therefore undisputed on the record made by Rodriguez himself that by November 1st each year, the

12

Clubhouse, Pro Shop, Halfway House, availability of golf carts, and caddy services to members, are all closed. *See id.* at 22:2–7, 24:13–18.

To the extent the National kept a skeleton crew of maintenance workers and administrative staff on-site in the off season, these individuals were responsible only for basic maintenance and back office operations on the National's grounds. *See id.* at 19:20–22, 27:1–11, 165:1–3. The Department of Labor expressly provides that "[i]f an establishment" performs "activities such as maintenance operations or ordering supplies during the dead season, it is not considered to be operating for purposes of the [seasonality] exemption." U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook, Ch. 25; 25j01(b) (Aug. 10, 2016). *See also Jeffrey v. Sarasota White Sox, Inc.*, 64 F.3d 590, 596 (11th Cir. 1995) (preparation and maintenance of the baseball fields during the off season "does not alter the Court's finding that Defendant's operation does not last longer than seven months in any calendar year").

Based on Rodriguez's own allegations and testimony, the National falls squarely within the FLSA's seasonality exemption. Therefore, certification is improper because Rodriguez is not entitled to overtime compensation under the FLSA. *See Amendola*, 558 F. Supp. 2d at 467.

### POINT IV

### RODRIGUEZ'S PROPOSED NOTICE TO PUTATIVE CLASS MEMBERS SHOULD BE REJECTED

While certification should be denied, if the Court does grant conditional certification, it should not authorize the dissemination of the proposed notice submitted by Rodriguez.

First, Rodriguez seeks certification of a putative class consisting of "all golf caddies" without regard to whether the putative class members are "similarly situated." Rodriguez alleges that during the full season, he caddied seven days a week for a total of 66.5 hours per week. Am. Compl. ¶¶ 34, 36; Pl. Aff. ¶¶ 7, 9. Although class certification should be denied because Rodriguez

13

made no effort to provide any specific facts about the hours caddied per week or the weekly earnings of any individual golf caddy, the proposed putative class of "all golf caddies" encompasses caddies who are not similarly situated to Rodriguez. *See supra,* Point II. Consequently, the putative class should include only those individuals who were similarly situated to Rodriguez, *i.e.,* those who regularly caddied seven days each week for a total of 66.5 hours during the entire golf season.

Second, the proposed notice improperly states that Rodriguez was a "former employee" of the National Golf Links of America or "worked" at the National Golf Links of America. Zabell Declaration, Ex. 3. This claim is, of course, disputed. The Court should not sanction any such representation at this stage. Rodriguez's allegation that he was a "former employee" should not be permitted in the notice. Rather, the notice should reflect in more general terms that Rodriguez "performed caddy services at the National Golf Links of America."

Third, Rodriguez's lawyers should be required to provide precise information regarding their fees. Specifically, his counsel should be required to disclose the fee arrangement between any prospective plaintiffs, as well as the percentage of any recovery that would be paid as attorney's fees from any recovery by opt-in plaintiffs pursuant to a contingency fee arrangement. *See Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (holding that the final notice must include statement regarding the fee arrangement agreed to by plaintiff and his attorneys, because such arrangement would have an impact on any recovery by opt-in plaintiffs). The proposed language is deliberately vague on this point.

Fourth, Rodriguez's three month opt-in period is excessive. Courts in the Second Circuit have held that a sixty-day opt-in period is "common practice." *See e.g., Moore v. Eagle Sanitation, Inc.,* 276 F.R.D. 54, 61 (E.D.N.Y. 2011); *Bowens v. Atl. Main Corp.,* 546 F. Supp. 2d 55, 85

14

(E.D.N.Y. 2008). Rodriguez has offered no "special circumstances" to justify an extended opt-in period. Pl. Br. at 16-17; *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 3d 445 (S.D.N.Y. 2011). Absent a showing of "special circumstances," the opt-in period should be no more than sixty days.

Fifth, Rodriguez seeks to send a notice to all golf caddies within six years of the filing of the complaint. Rodriguez has not moved for certification on his New York Labor Law claims and, as a result, does not justify the proposed six year notice period. *See Lubas v. JLS Group, Inc.*, No. 18-Civ-6611, 2020 WL 4210754, at *12 (E.D.N.Y. Jul. 22, 2020); *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011) ("the growing trend in this district appears to be limiting the notice period to three years"). Moreover, given the law regarding the employment status of golf caddies and that Rodriguez failed to set forth any evidence that defendants' conduct was willful, the collective action period should only be two years. *See Schear v. Food Scope Am. Inc.*, 297 F.R.D. 114, 128-29 (S.D.N.Y 2014) (applying two year statute of limitations period where Rodriguez has not provided evidence supporting a finding of a willful violation).

Finally, the notice period should run from the date the notice is given, rather than the date Rodriguez filed his Complaint. *See, e.g., In re Penthouse Exec. Club*, No. 10-Civ-1145, 2010 WL 4340255, at *5 n. 4 (S.D.N.Y. Oct. 27, 2010) (finding the notice period runs from the date the notice is sent). For these same reasons, Rodriguez should not be permitted to obtain contact information for golf caddies beyond two years. *Gurrieri v. County of Nassau*, No. 16-Civ-6983, 2019 WL 2233830, at *12 (E.D.N.Y. May 23, 2019) (defendant only needed to provide information consistent with the applicable FLSA statute of limitations).

## CONCLUSION

For all of the foregoing reasons, defendants respectfully request that Rodriguez's motion to proceed as a collective action pursuant to the FLSA, be denied in its entirety, together with such other and further relief as this Court deems necessary.

Dated: August 28, 2020

Respectfully submitted,

FARRELL FRITZ, P.C.

By: /s/ Domenique Camacho Moran
    Domenique Camacho Moran
    *Attorneys for Defendants*
    400 RXR Plaza
    Uniondale, New York 11556
    Tel.:  (516) 227-0700

and

Marc Wolinsky
Nathaniel D. Cullerton
WACHTELL, LIPTON, ROSEN & KATZ
*Attorneys for Defendants*
51 West 52nd Street
New York, New York 10019
Tel.: (212) 403-1000

16