# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANDREW RODRIGUEZ, in his individual capacity
and on behalf of others similarly situated,

        **Plaintiff,**

    - against -

NATIONAL GOLF LINKS OF AMERICA and
WILLIAM MULLER,

        **Defendants.**

Case No.: 19-cv-07052 (PKC) (RML)

SECOND
AMENDED COMPLAINT

JURY TRIAL DEMANDED

   Plaintiff, **ANDREW RODRIGUEZ**, by and through his attorneys, **ZABELL &**

**COLLOTTA, P.C.**, complains and alleges as follows:

## I. PRELIMINARY STATEMENT

1. Despite being one of America's most exclusive golf courses, Defendant **NATIONAL**

  **GOLF LINKS OF AMERICA** (the "National" or "club") does not compensate the

  caddies who, by policy of the club, serve its members.

2. Although caddies such as Mr. Rodriguez work up to twelve (12) hour days, seven (7)

  days a week, they are only paid for each golf-bag they carry. The rate for doing so is

  predetermined by the National. Under this system, the National classifies their

  caddies as neither employee nor independent contractor, and in the process deprives

  them of the basic rights and entitlements under Federal, State, and Local laws.

3. Accordingly, Mr. Rodriguez brings this action, on behalf of himself and other similarly

  situated employees and/or former employees of the National, seeking monetary

  damages, declaratory relief, and affirmative relief based upon Defendants' violations

  of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the New York

Labor Law ("NYLL"), N.Y. Lab. Law § 190, *et seq.*; New York State Department of Labor Regulations ("NYDOL Regs"), N.Y.C.R.R. § 142-2.2; and other appropriate rules, regulations, statutes and ordinances.

4.  Therefore, Mr. Rodriguez alleges, pursuant to the FLSA and NYLL, that he is entitled to recover from Defendants, for himself and on behalf of all similarly situated employees: (1) overtime compensation for all hours worked in excess of forty (40) hours per week; (2) unpaid "spread-of-hours" compensation; (3) unpaid compensation for Defendants' minimum wage violations; (4) liquidated damages; and (5) an award of attorneys' fees and costs.

## II.   JURISDICTION & VENUE

5.  This Court maintains jurisdiction over the claims presented herein pursuant to 28 U.S.C. §§ 1331 and 1367.

6.  This Court maintains jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367.

7.  This action properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the conduct alleged herein occurred within the State of New York, Suffolk County.

8.  This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## III.   PARTIES

9.  Plaintiff, **ANDREW RODRIGUEZ** ("Plaintiff"), is a domiciliary of the State of New York residing in Suffolk County.

10. At all times relevant to the Complaint, Plaintiff was an "employee" of Defendants within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e) and Section 190(2) of the NYLL, N.Y. Lab. Law § 190(2).

11. The National is a domestic corporation with a principal place of business located at 149 Sebonac Inlet Road, Southampton, New York 11968.

12. Upon information and belief, individual Defendant **WILLIAM MULLER** is a domiciliary of the State of New York residing in Suffolk County.

13. Defendant Muller  is the designated "Caddy Master" at the National with the following authority: (1) hire and fire employees; (2) supervise and control employee work schedules and the work environment; (3) determine the rates and methods of payment of employees; and (4) maintain employment records for the National.

14. At all times relevant herein, each Defendant acted as an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and Section 190(3) of the NYLL, N.Y. Lab. Law § 190(3).

15. At all times relevant herein, the National is an "enterprise" and performed activities for a business purpose within the meaning of 29 U.S.C. §§ 203(r)(1) and (r)(2).

16. At all times relevant herein, the National employed more than two (2) employees and had a gross annual dollar volume of sales made or business done of not less than five hundred thousand dollars ($500,000.00) (exclusive of excise taxes at the retail level that are separately stated).

17. At all times relevant herein, Defendants employed more than two (2) employees engaged in interstate commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

18. At all times relevant herein, Defendants employed employees, including Plaintiff, who regularly were and are presently engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. § 2073(b), (g), (i), and (j) in connection with the operation of the National as a private club.

## IV.   FACTUAL ALLEGATIONS

19. The National is a private eighteen (18) hole course covering two hundred fifty-three (253) acres on the Peconic Bay.

20. Due to the nature of the sport the National's location, the grounds of the National are generally opened for member use annually from approximately the last weekend of April through the first weekend of November.

21. During its season, the National employs between thirty (30) to fifty (50) caddies in the "off-peak" months, and between seventy (70) to eighty (80) in the height of the golf season.

22. All caddies are hired and supervised at the National by its Caddy Master, William Muller.

23. The National's caddies are "non-exempt" employee eligible for overtime premiums for all hours worked in excess of forty (40) hours a week.

24. Plaintiff was hired to fill the role of caddy for the National by Mr. Muller in 2003.

25. Since that time, Plaintiff has worked as a caddy exclusively at the National during its season of operation until his termination on or about October 9, 2019.

26. As he came to the National as experienced caddy, Plaintiff's training at the time of hire was minimal, and consisted of gaining a "lay of the land" while working as caddy alongside a caddy experienced at the National during a round of golf.

27. However, depending on their experience level, an individual hired as a caddy at the National receives training while "shadowing" other experienced caddies as they assist members of the National play rounds of golf.

28. As a caddy, Plaintiff's duties entailed carrying the golf bags of two (2) members during a round of golf.

29. Members of the National are required, as per club policy, to take with them a caddy on every round of golf.

30. A typical round of golf may last up to four and half (4.5) hours as members of the National play the eighteen (18) hole course.

31. As a policy of the National, absent exigent circumstances (such as the physical impairment of a member), caddies are required to carry members' golf bags on foot during the entirety of a round.

32. In addition to carrying members' golf bags, caddies are also required to: find, identify, and retrieve members' golf balls; wash and clean golf balls and clubs; correct divots on the green and rake sand traps after member use; and removed the flag from the hole on the putting green.

33. Caddies may work one (1) to two (2) rounds a day, depending generally on the volume of golfers, repeating their responsibilities over the course of each round of golf.

34. As with most caddies at the National, Plaintiff's average workweek consisted of the following schedule:

> Monday:      11:30 a.m. – 6 p.m.;
>
> Tuesday:      6:30 a.m.  – 5 p.m.;
>
> Wednesday: 6:30 a.m.  – 5 p.m.;
>
> Thursday:    6:30 a.m.  – 5 p.m.;
>
> Friday:        6:30 a.m.  – 5 p.m.;
>
> Saturday:     6:30 a.m.  – 5 p.m.; and
>
> Sunday:       6:30 a.m.  – 2 p.m.

35. However, during each of the ten (10) tournaments held by the National during its season, caddies are required to work Friday and Saturday schedules beginning at 6:30 a.m. and ending at 6 p.m.

36. Accordingly, Plaintiff's average weekly schedule consisted of approximately sixty-six and a half (66.5) hours of work a week.

37. During the ten (10) weekends that the National held tournaments, Plaintiff routinely worked between sixty-nine (69) and seventy (70) hours per week.

6

38. Under the average weekly schedule, Plaintiff and other caddies signed into a daily roster and were assigned to caddy for members by Mr. Muller.

39. Mr. Muller maintains the authority to assign caddies to the service of members at his discretion.

40. Such discretion is exercised as a means by which to both reward and punish – as caddies assigned to more rounds of golf carry more bags carried and, thus, receive more compensation.

41. Although caddies are able to select the days of the week they work, caddies who do not make themselves available on a daily basis do not receive regular work assignments.

42. Moreover, depending on the volume of members golfing on any given day and the discretion of Mr. Muller, a caddie may not have the opportunity to assist with a round of golf all day and, consequently, does not get paid for that day.

43. However, during times when not assisting members on a round of golf, Plaintiff was required to perform tasks in the caddy locker room, such as cleaning and folding towels; vacuuming the locker room; cleaning its toilets and sinks; sweeping the outside patio; as well as washing golf carts.

44. When not assisting a member on a round of golf, Plaintiff and other golf caddies were also required to deliver beverages to members out on the National's course.

45. Neither Plaintiff, nor any other caddy, is paid the minimum wage, nor any other form of compensation, for their time performing non-golf related actives like those described in the preceding paragraphs.

46. Caddies at the National are only paid by club members at a rate predetermined by the National, regardless of a caddie's skill level or experience.

47. For its 2016, 2017, 2018, and 2019 seasons, the National set the rate at which caddies were compensated at one hundred twenty dollars ($120.00) per bag carried during a round of golf.

48. Prior to which, the rate was set at one hundred dollars ($100.00) per bag carried during a round of golf.

49. Further, the National maintains policies concerning caddy uniforms, wherein Plaintiff and those similarly situated were required to purchase (at their own expense) and wear "bibs" and baseball caps featuring the National's logo.

50. At all times relevant herein, Plaintiff performed the essential functions of his position in a more than satisfactory manner and satisfied all conditions precedent to payment in accordance with the established terms and conditions of his employment.

51. At all times relevant herein, Defendants failed to maintain time records for all hours worked by Plaintiff and those caddies who are and were similarly situated.

52. Defendants willfully disregarded and purposely evaded record keeping requirements of the FLSA and the NYLL by failing to maintain accurate time sheets and payroll records.

53. Defendants failed to maintain any records for Plaintiff and other caddies, who were not designated as either employees or independent contractors.

54. Defendants failed to post notices explaining wage and hour requirements in conspicuous locations as required by the FLSA, 29 C.F.R §516.4 and the NYLL,

N.Y.C.R.R. 12 § 137-2.3.

55. During Plaintiff's tenure, Defendants also failed to provide him with written notice of his wage rate, in accordance with the New York State Wage Theft Prevention Act, NYLL § 195(1).

56. In addition, Defendants failed to provide Plaintiff with wage statements, in accordance with NYLL § 195(3).

57. Following the commencement of the instant action on December 12, 2019, Plaintiff began to receive communications from a member of the National, John P. McNiff.

58. The purpose and content of these communications concerned Mr. McNiff's attempts to persuade Plaintiff to discontinue the instant action.

59. In so doing, Mr. McNiff stated to Plaintiff defense counsel's reputation for aggressive litigation tactics, going so far as to warn Plaintiff of his potential for bankruptcy in the face of hypothetical legal fees.

60. Mr. McNiff further offered to pay Plaintiff's accrued legal fees while aggressively attempting to push Plaintiff into a settlement.

61. Plaintiff refused Mr. McNiff's offer and stated his intention to proceed with the instant matter.

62. On March 19, 2020, Mr. McNiff commenced an action against Plaintiff in the Supreme Court State of New York, County of Suffolk, designated by Index No. 605235/2020 (the "State Court Action").

63. The State Court Action was filed on behalf of Mr. McNiff by Marc Wolinksy, Esq., of Wachtell, Lipton, Rosen & Katz ("Wachtell").

64. Mr. Wolinsky and Watchtell are counsel to Defendants herein.

65. The State Court Action was filed as part of a larger stratagem in an attempt to both retaliate against Plaintiff for commencing the instant and to dissuade potential collective action and/or class members from joining this litigation.

## V.    COLLECTIVE ACTION ALLEGATIONS

66. Plaintiff repeats and re-alleges each and every allegation above as if specifically set forth herein.

67. This action is properly maintainable as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b).

68. This action is brought on behalf of Plaintiff and a class consisting of similarly situated employees who work, or have worked, for Defendants.

69. At all times relevant herein, Plaintiff, and the other FLSA collective action Plaintiffs, are and have been similarly situated, have suffered similar job requirements and pay provisions, are and have been subject to Defendants' common policies, programs, practices, procedures, protocols, routines, and rules, willfully failing and refusing to pay overtime pay at a rate of one and one-half (1.5) times Plaintiffs' regular hourly rate for all hours worked in excess of forty (40) hours per week and their failure to pay the minimum wage for all hours worked.

70. Upon information and belief, there exist current and former employees who are similarly situated to this Plaintiff, whom, in violation of the FLSA, have been underpaid. The named Plaintiff is representative of those other workers and is acting on behalf of Defendants' current and former employees' interests, as well as his own

interest in bringing this action.

71. Plaintiff seeks to proceed as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and all similarly situated persons who work or have worked for Defendants at any time during the six (6) years prior to the filing of their respective consent forms.

72. Plaintiff and potential Plaintiffs who elect to opt-in as part of the collective action are all victims of the Defendants' common policies and/or scheme to violate the FLSA whereunder they failed to provide: overtime wages at the rate of one and one-half (1.5) times the regular rate of pay for all time worked in excess of 40 hours in any given week pursuant to 29 U.S.C. § 207; and the applicable or governing minimum wage in violation of 29 U.S.C. § 206.

## VI.   FEDERAL RULE OF CIVIL PROCEDURE 23 CLASS ACTION ALLEGATIONS

73. Plaintiff repeats and re-alleges each and every allegation above as if specifically set forth herein.

74. Plaintiff also brings his NYLL claims on behalf of himself and a class of persons under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23 Class") comprised of all persons who work or have worked for Defendants in the State of New York at any time from the six (6) years prior to the filing of this Complaint to the entry of judgment in this case.

75. The persons in the Rule 23 Class are so numerous that joinder of all members is otherwise impracticable.

76. The persons in the Rule 23 Class are readily ascertainable. The names and addresses

11

of such persons are readily available and can be obtained from Defendants for purposes of notice and any other purpose related to this action.

77. Defendants have acted or refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

78. The questions of law and fact common to the Rule 23 Class that predominate over any questions solely affecting individual members of the Rule 23 Class include, but are not limited to:

a. Whether Defendants unlawfully failed to properly compensate Plaintiff(s) in violation of and within the meaning of New York Labor Law Article 6, §190, *et seq.*, and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

b. Whether Plaintiff and the Rule 23 Class are "non-exempt" from entitlement to overtime compensation for all hours worked in excess of forty (40) hours per week;

c. What policies, practices and procedures Defendants implemented regarding payment of overtime compensation, and spread of hours;

d. Whether Defendants failed to pay Plaintiff and the Rule 23 Class overtime compensation for all hours worked in excess of forty (40) hours per week within the meaning of the NYLL Article 19 § 650, et seq. and the supporting NYDOL Regs., 12 N.Y.C.R.R. Part 142;

e. Whether Defendants failed to pay Plaintiff and the Rule 23 Class spread of hours pay by failing to pay an additional hour's pay when they worked more than ten

(10) hours in a day, as provided by 12 N.Y.C.R.R. sect. 142-2.4;

f. Whether Defendants failed to pay Plaintiff and the Rule 23 Class the minimum wage on days when Plaintiff and the Rule 23 Class received no compensation whatsoever despite being required to work, in violation of NYLL § 652;

g. The nature and extent of the Rule 23 Class-wide injury and the appropriate measure of damages for the Class; and

h. Whether Defendants' failure to pay Plaintiff and the Rule 23 Class overtime compensation for all hours worked in excess of forty (40) hours per week, failure to pay spread of hours pay, and failure to pay minimum wage was done willfully or with reckless disregard for the applicable federal and state wage and hours laws.

79. Plaintiff's claims are typical of the claims of the Rule 23 Class he seeks to represent. Plaintiff and the Rule 23 Class work, or have worked, for Defendants in non-exempt positions; have had their rights to immediate possession to their wages wrongfully interfered with by Defendants; and have not been paid overtime compensation, spread of hours pay, or the applicable minimum wage. Defendants have acted and have refused to act on grounds generally applicable to the Rule 23 Class, thereby making declaratory relief with respect to the Rule 23 Class appropriate.

80. Plaintiff's claims are typical of those claims which could be alleged by any member of the Rule 23 Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All Class members were subject to the same corporate practices of Defendants, as alleged herein, of wrongful conversion

of earned compensation, failing to pay overtime compensation and failing to provide spread of hours pay.

81. Plaintiff will fairly and adequately represent and protect the interests of the Rule 23 Class.

82. Plaintiff has retained counsel competent and experienced in both complex class actions and in labor and employment litigation.

83. A class action is superior to other available methods for the fair and efficient adjudication of this litigation, particularly in the context of a wage and hour litigation like the present action, where an individual Plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the necessary duplication of efforts and expense that numerous individual actions beget. The adjudication of individual claims would result in a great expenditure of Court and public resources; conversely, treating the claims would result in significant costs savings. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' policies, practices and procedures. Although the relative damages suffered by the individual members of the Rule 23 Class are not *de minimus*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

84. Current employees are often hesitant to assert their rights out of fear of direct or indirect retaliation.  Former employees are reluctant to bring claims because doing so can harm their present and future employment and further efforts to obtain employment. Class actions provide class members who are not named in the Complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing risks.

## VII.   CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### FAILURE TO PAY OVERTIME UNDER THE FLSA

85. Plaintiff repeats and re-alleges each and every allegation above as if specifically set forth herein.

86. Defendants have been and remain to be employers engaged in interstate commerce and/or the production of goods for commerce under the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

87. Defendants were required to pay Plaintiff no less than 1.5 times the regular rate at which he was employed for all hours worked in excess of 40 hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

88. At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff the proper overtime compensation for his hours worked in excess of 40 hours per workweek.

89. Defendants were aware or should have been aware that the practices described in

this Complaint were unlawful, making its violations willful or reckless.

90. Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiff compensation.

91. Defendants have failed to make, keep and preserve records with respect to their employees sufficient to determine the wages, hours, and other conditions and practices of employment, violating the FLSA, 29 U.S.C. §§ 201, 207(a)(1) and 215(a).

92. As a result of Defendants' FLSA violations, Plaintiff has suffered damages by being denied wages in accordance with the FLSA in amounts to be determined at trial, and is entitled to recover of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
## FAILURE TO PAY OVERTIME UNDER
## THE NEW YORK LABOR LAW

93. Plaintiff repeats and realleges every preceding allegation as if set forth fully herein.

94. Under the Labor Law and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiff 1.5 times his regular rate of pay for all hours he worked in excess of 40 per workweek.

95. Defendants failed to pay Plaintiff the overtime wages to which he was entitled, violating N.Y. Lab Law § 650.

96. Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiff overtime.

97. Due to Defendants' Labor Law violations, Plaintiff is entitled to recover from

Defendants unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post- judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CAUSE OF ACTION
## FAILURE TO PAY SPREAD-OF-HOURS PAY UNDER
## THE NEW YORK LABOR LAW

98. Plaintiff repeats and realleges every preceding allegation as if set forth fully herein.

99. Defendants willfully failed to pay Plaintiff one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff's spread of hours exceeded ten hours, violating Part 146 § 146-1.6 of Title 12 of the Official Compilation of Codes, Rules and Regulations.

100.     Due to Defendants' Labor Law violations, Plaintiff is entitled to recover from Defendants his unpaid spread-of-hours pay, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION
## FAILURE TO PAY MINIMUM WAGE UNDER THE FLSA

101. Plaintiff repeats and realleges every preceding allegation as if set forth fully herein.

102. Defendants willfully failed to pay Plaintiff the statutory minimum wage for all hours worked in violation of 29 U.S.C. § 206, paying him no compensation at all, despite requiring his regular attendance.

103. Due to Defendants' FSLA violations, Plaintiff is entitled to recovered from Defendants his unpaid minimum wage, liquidated damages, attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court

deems just and proper.

## FIFTH CAUSE OF ACTION
## FAILURE TO PAY MINIMUM WAGE UNDER
## THE NEW YORK LABOR LAW

104. Plaintiff repeats and realleges every preceding allegation as if set forth fully herein.

105. Defendants willfully failed to pay Plaintiff the statutory minimum wage for all hours worked in violation of NYLL § 652, paying him no compensation at all, despite requiring his regular attendance.

106. Due to Defendants' Labor Law violations, Plaintiff is entitled to recovered from Defendants his unpaid minimum wage, liquidated damages, attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## SIXTH CAUSE OF ACTION
## FAILURE TO PROVIDE 195.1 NOTICE UNDER
## THE NEW YORK LABOR LAW

107. Plaintiff repeats and realleges every preceding allegation as if set forth fully herein.

108. Defendants willfully failed to supply Plaintiff with the required Notice and Acknowledgement of Pay Rate and Payday under § 195.1(a) within 10 business days of his first employment date.

109. Due to Defendants' violations of N.Y. LAB. LAW § 195.1, Plaintiff is entitled to recover from Defendants $50.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab Law § 198(1)-b (2016).

## SEVENTH CAUSE OF ACTION
## FAILURE TO PROVIDE 195.3 WAGE STATEMENT UNDER
## THE NEW YORK LABOR LAW

110. Plaintiff repeats and realleges every preceding allegation as if set forth fully herein.

111. Defendants willfully failed to supply Plaintiff with an accurate wage statement with each payment of wages, violating N.Y. Lab Law § 195.3.

112. Due to Defendants' violations of N.Y. Lab Law § 195.3, Plaintiff is entitled to recover from Defendants $250.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab Law § 198(1)-d (2016).

## EIGHTH CAUSE OF ACTION
## UNLAWFUL RETALIATION UNDER THE FLSA

113. Plaintiff repeats and realleges every preceding allegation as if set forth fully herein.

114. Pursuant to 29 U.S.C. §215(a)(3), it is unlawful to retaliate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to the FLSA.

115. Plaintiff was retaliated against for his good-faith and statutorily protected act of commencing the instant action.

116. Specifically, in an attempt to pressure Plaintiff to discontinue the instant action – and to dissuade other employees from seeking redress for Defendants' failure to provide its golf caddies with compensation to which they are statutorily entitled – a member of the, John P. McNiff, commenced legal action against Plaintiff.

117. In fact, the State Court Action was only commenced after Plaintiff refused Mr. McNiff's repeat overtures, made on behalf of Defendants, to discontinue the instant

action.

118. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff is entitled to recover from Defendants unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post- judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## NINTH CAUSE OF ACTION
## UNLAWFUL RETALIATION UNDER THE NYLL

119. Plaintiff repeats and realleges every preceding allegation as if set forth fully herein.

120. Pursuant to NYLL §215(1)(a), it is unlawful to retaliate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to the NYLL.

121. Plaintiff was retaliated against for his good-faith and statutorily protected act of commencing the instant action.

122. Specifically, in an attempt to pressure Plaintiff to discontinue the instant action – and to dissuade other employees from seeking redress for Defendants' failure to provide its golf caddies with compensation to which they are statutorily entitled – a member of the, John P. McNiff, commenced legal action against Plaintiff.

123. In fact, the State Court Action was only commenced after Plaintiff refused Mr. McNiff's repeat overtures, made on behalf of Defendants, to discontinue the instant action.

124. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff is entitled to recover from Defendants unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post- judgment interest, and such other legal and

equitable relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

125. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact this Complaint raises.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court grant the following relief:

i.   A declaratory judgment stating that the practices complained of herein are each unlawful under the FLSA and the Labor Law;

ii.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, preventing them from engaging in each of the unlawful practices, policies and patterns set forth herein;

iii. An award to Plaintiff and those similarly situated for earned but unpaid overtime under the Labor Law and the FLSA;

iv.  An award to Plaintiff and those similarly situated for earned but unpaid spread-of-hours pay under the Labor Law;

v.   An award to Plaintiff and those similarly situated for earned but unpaid minimum wage under the Labor Law and the FLSA

vi.  A monetary award to Plaintiff and those similarly situated for Defendants' failure to provide the N.Y. Lab. Law § 195.1 Notice;

vii. A monetary award to Plaintiff and those similarly situated

commensurate with Defendants' failure to provide the N.Y. Lab. Law §
195.3 Statements;

viii.   An award of liquidated damages as a result of Defendants' Labor Law
violations;

ix.   An award of liquidated damages as a result of Defendants' willful FLSA
violations;

x.   An award of pre-judgment and post-judgment interest;

xi.   An award of costs and expenses of this action, together with reasonable
attorneys' fees and costs; and

xii.   Such other and further relief as this Court deems just and proper.

Dated:      October 27, 2020
            Bohemia, New York                       Respectfully submitted,

                                                    ZABELL & COLLOTTA, P.C.
                                                    *Attorneys for Plaintiff*

                        By:      _____
                                 Saul D. Zabell, Esq.
                                 Christopher K. Collotta, Esq.
                                 Ryan T. Biesenbach, Esq.
                                 1 Corporate Drive, Suite 103
                                 Bohemia, New York 11716
                                 T: (631) 589-7242
                                 F: (631) 563-7475
                                 SZabell@laborlawsny.com
                                 CCollotta@laborlawsny.com
                                 RBiesenbach@laborlawsny.com